UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| PRINCE MCCOY, § | | |
| TDCJ # 00852958, § | | |
| § | | |
| Plaintiff, § | | |
| VS. § | | CIVIL ACTION NO. 3:17-CV-235 |
| § | | |
| MR. ALAMU, *et al*, § | | |
| § | | |
| Defendants. § | | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Prince McCoy, an inmate in the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ"), brings this lawsuit *pro se* complaining of excessive force used against him by a TDCJ officer. Plaintiff filed a motion for summary judgment (Dkt. 12), to which Defendant Tajudeen Alamu has responded (Dkt. 18) and Plaintiff has replied (Dkt. 22). Defendant filed a cross motion for summary judgement (Dkt. 20), and Plaintiff has responded (Dkt. 28). Plaintiff also has filed motions to amend his complaint (Dkt. 24, Dkt. 31). The motions are ripe for decision. After reviewing all of the evidence submitted, the parties' briefing, the applicable law, and all matters of record, the Court concludes that leave to amend the pleadings should be **DENIED** and summary judgment should be **GRANTED** for Defendant.

### I. BACKGROUND

Plaintiff filed his complaint (Dkt. 1) on July 25, 2017, and later amended with the Court's leave (Dkt. 8). His amendment (Dkt. 6) attaches witness statements, medical

records, and grievances. Defendant has submitted Use of Force records for Plaintiff (Dkt. 20-1) and the Use of Force video recording (Dkt. 20-2).

The parties agree that on December 28, 2016, while Plaintiff McCoy was incarcerated at the Darrington Unit in Rosharon, Texas, Defendant Alamu sprayed him with a chemical agent. Plaintiff refers to the chemical agent as "mace" or "pepper spray." At the time, McCoy was housed in cell 1-24 on the "D-Line" of the Darrington Unit's administrative segregation block. According to McCoy's complaint, at approximately 2:00 p.m., Alamu approached the cell of an inmate named Jackson, who was nearby in D-Line cell 1-22, and Jackson threw water on Alamu. Alamu then radioed to Sergeant Jacobs, who "came and dealt with the matter" (Dkt. 1, at 4). At approximately 3:30 p.m., Jackson again threw water on Alamu. Alamu then sprayed Plaintiff in the face:

> [After Jackson threw water a second time,] Alamu stood there a minute, whipped his face and pulled out his mace. In[ma]tes began to scream, "You can't spray him." Alamu asked Jackson, "Where you at?" Two minutes later Alamu put his mace up and walked to the next cell. Plaintiff walked away from his door. Alamu came to plaintiff's cell (I-24) and stood on the side of the door, and said, "24 cell, what[']s your name and number?" Plaintiff walked to the door and began to tell him his name, when Alamu sprayed plaintiff in the face with his mace. Alamu called in on the radio what he did.

(*Id.*). McCoy alleges that Alamu sprayed him "for no reason at all" (*id*. at 14). He submits witness statements from two other inmates who also state that Alamu "whipped his face" and sprayed McCoy.[1]

---

[1] Marquieth Jackson, who was in cell I-22, states that he threw water on Alamu and that Alamu attempted to spray Jackson "but I had a sheet up to block it," and that Alamu then

After spraying McCoy, Alamu immediately initiated the Incident Command System over his radio. A supervisor and additional staff then arrived with a video camera. One of the officers, Sergeant Idris, summoned medical staff to the cell for screening (Dkt. 20-1, at A-012). The video recording, which is three minutes long, began at around this point and captured Idris narrating the events (i. at A-012; Dkt. 20-2). Gregory Burkhalter, a nurse, arrived and screened McCoy without entering the cell, asking McCoy if he had any injuries (Dkt. 20-2, at 00:40-1:15). McCoy, who was walking around the cell, answered Burkhalter by saying, "I can't breathe" and "I got sprayed in my face" (*id*. at 00:40-1:00). Burkhalter then stated to the camera that McCoy "appears to be moving around just fine" and was "talking, able to breathe with no distress" (*id*. at 1:00-1:10). The written records also state, based on Burkhalter's assessment, that McCoy had no injuries (Dkt. 20-1, at A-012, A-019 & A-023). Burkhalter left and Idris then continued the narration, took still photos, explained to McCoy the reporting process and procedures, and provided him with paperwork through his cell slot.[2] Throughout the video, McCoy was walking around his cell and talking, with no breathing problems apparent on the recording. McCoy did not make any complaints to Burkhalter, or elsewhere on the video recording, about his eyes.

---

"whipped his face" and sprayed McCoy (Dkt. 6, at 3). Justin Johnson, who was in cell I-21, states that McCoy told Alamu his name and then Alamu "whipped his face" and "spray[ed] into 24 cell" (Dkt. 6, at 5). These statements are dated December 29, 2016, the day after the incident. According to the Use of Force Report, Jackson and Johnson, along with multiple other inmates, had declined the opportunity to submit statements when asked by TDCJ officials on December 28th (Dkt. 20-1, at A-018).

[2] *See* Dkt. 20-2, at 01:10-3:00; Dkt. 20-1, at A-024 (still photo); Dkt. 20-1, at A-016 (Idris statement); Dkt. 20-1 at A-017 (videographer statement).

McCoy maintains that because he was in his cell when Alamu sprayed him, he was not a threat (Dkt. 1, at 16). He alleges that he "show[ed] no signs of aggression and did not pose an immediate threat of harm to the officer or anyone" (*id*.). McCoy further states that, according to TDCJ regulations governing the use of force and of chemical agents, Alamu was required to warn him and give him a chance to comply (*id*. at 19).

TDCJ investigated the incident and completed a Use of Force Report, which resulted in a reprimand and three months disciplinary probation for Alamu (Dkt. 20-1, at A-006). The reprimand form reflects that officials determined that Alamu's use of force was provoked by an "assault" from McCoy, but that Alamu could have responded by "moving away" rather than spraying chemical agents:

> On 01/12/17 a fact finding inquiry was completed . . . . Review indicated that Officer Alamu was assaulted by Offender McCoy # 852958, who was secured in D-I-24 cell. Officer Alamu responded by administering his COP [Carry-On-Person] chemical agents. The assault was not ongoing and Officer Alamu was able to avoid further assault by moving away.

(*id*.). Alamu's written statement described being hit by "unknown liquid" from Jackson's cell (I-22) (*id.* at A-010). Alamu then states that, as he moved to cell I-24 where McCoy was housed, he was struck in the face, which caused him to react involuntarily:

> As soon as I approached cell 24 I was [struck] in my face with an unknown weapon and I went blank. I felt my life was in danger and the next thing that crossed my mind was to use my COP. And that resulted in initiating [the Incident Command System]. It was an involuntary action that happened to me and that was why I had to pull out my COP.

(*id*.). Other documents in the record identify the object that struck Alamu as "a piece of rolled toilet paper" (*id*. at A-027). The report's fact findings state that McCoy had "assaulted Officer Alamu with an unknown object" and that Alamu "indicate[d] that the

assault dazed him and he responded by administering his COP chemical agent" (*id*. at A-007). *See id*. at A-003 (finding that Alamu used his spray because McCoy "threw an object from his cell and struck [Alamu] in the face") McCoy denies that he struck Alamu and notes that he did not receive a disciplinary case for the incident (Dkt. 28, at 1).

The Use of Force Report concluded that Alamu's actions were not consistent with TDCJ's Use of Force Plan and had violated an internal rule, Rule 24(a) (Dkt. 20-1, at A-004). The warden found that Alamu's use of his chemical spray was inappropriate, but not aggravated (*id*. at A-007).[3] The report also noted that Alamu did not have previous violations on his record (*id*. at A-006).

TDCJ records state that neither McCoy nor Alamu were injured in the incident (*id*. at A-019). The records also reflect that McCoy was decontaminated with "copious amounts of water and fresh air" and the area sprayed was "wiped clean utilizing soap and water" (*id*. at A-011). However, Plaintiff alleges in his Complaint that he "suffers from burning skin & eyes, lungs with contested breathing (being asthmatic), irritating eyes, [and] vision impairment," as well as "discomfort [and] severe stomach pains" (Dkt. 1, at 14). He also alleges emotional and psychological harm.[4]

---

[3]  Alamu did not spray his entire can of chemical agents during the incident, but rather 3.7 out of 5.0 ounces (*id*. at A-011).

[4]  *Id*. (in Complaint, Plaintiff alleges mental anguish, pain and suffering, shock, discomfort, "frequent nightmares in which officers attempt to kill him," emotional distress, ongoing anxiety, "lack of concentration and mental awareness," "a constant irrational fear of prison guards," and flashbacks); Dkt. 6, at 6 (in a statement dated January 8, 2017, Plaintiff stated that, "I suffer extremely from burning skin, and lungs with congested breathing, irritating eyes" as well as humiliation, mental anguish, frequent nightmares, anxiety, trouble sleeping, depression, and other emotional injury).

McCoy states that he received related medical treatment at the Clements Unit, where he was transferred the day after the incident, for "stomach pains from the chemical agents entering his digestive system" and "eye drops for a thick white discharge from his eyes" (Dkt. 28, at 2, 7-9). He provides the Court with his "sick call" slips requesting medical attention for these issues, among others. The Court notes that some of his sick call slips complain of unrelated medical issues, such as low blood sugar, and that some refer to a separate incident in which ammonia was "rubbed in [his] eyes."[5] Handwritten notes on the sick call slips, apparently made by prison medical staff, state that McCoy was seen by medical providers and that his problems had been addressed (Dkt. 6, at 7; Dkt. 12-2, at 3).

## II. STANDARDS OF REVIEW

### A. *Pro Se* Pleadings

In reviewing the pleadings and litigation history, the Court is mindful of the fact that Plaintiff is a TDCJ inmate proceeding *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less

---

[5] On January 14, 2017, Plaintiff wrote a sick call slip and stated, "my vision is blurred and my eyes are irritated with burning from being sprayed with pepper spray (Dkt. 6, at 9). He also stated, apparently on the same day, that in addition to being sprayed with pepper spray, he had been "subject to ammonia being rubbed in [his] eyes" (*id.*). He submits additional sick call slips in which he complained of low blood sugar and stomach pain (March 15, 2017); an "aftertaste of burning gas which causes shortness of breath" and "stomach pains" that "might be related" to the pepper spray used in December 2016 (March 29, 2017); psychological harm because he had been denied use of the grievance system after being sprayed (April 24, 2017); "severe stomach pains, vision impairment, and irritation in my eyes" (May 30, 2017); and "irritated and burning eyes" with "thick white discharge" and "vision impairment" due to "pepper spray and having ammonia rubbed in my eyes" (July 4, 2017). *See* Dkt. 6, at 8-9; Dkt. 12-2, at 3. McCoy also provides statements from other inmates corroborating his complaints of nightmares and distress, which are dated April, June, and July 2017 (Dkt. 6, at 14-16).

stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Even under this lenient standard a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). Regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997).

  B.  **Summary Judgment—Rule 56**

Both Plaintiff and Defendant have moved for summary judgment. Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Id*. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party."

*Id*. The nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (citation and internal quotation marks omitted).

In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (internal citation and quotation marks omitted). However, the non-movant cannot avoid summary judgment simply by presenting "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Jones v. Lowndes Cnty.*, 678 F.3d 344, 348 (5th Cir. 2012) (internal citation, alteration and quotation marks omitted); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Likewise, Rule 56 does not impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. Evidence not referred to in the response to the motion for summary judgment is not properly before the Court, even if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

### III. <u>ANALYSIS</u>

Plaintiff McCoy brings a claim against Defendant Alamu in his individual and official capacities for excessive use of force in violation of the Eighth Amendment.[6] He

---

[6] McCoy clarifies in his summary judgment response that he does not bring a retaliation claim against Alamu (Dkt. 28, at 1).

seeks relief in the form of compensatory, punitive, and nominal damages (Dkt. 1, at 4). Alamu seeks dismissal of all of Plaintiff's claims.

### A. Eleventh Amendment Immunity

A claim against a TDCJ official in his or her official capacity is a claim against TDCJ, and thus a claim against the State of Texas. *See Mayfield v. Tex. Dep't of Crim. Justice*, 529 F.3d 599, 604 (5th Cir. 2008). Because the Eleventh Amendment protects the states' sovereign immunity, federal courts lack jurisdiction over suits against a state for money damages unless the state has waived its immunity or Congress has clearly abrogated that immunity. *NiGen Biotech, L.L.C., v. Paxton*, 804 F.3d 389, 393-94 (5th Cir. 2015); *Moore v. La. Bd. of Elem. and Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). Texas has not waived its Eleventh Amendment immunity, and Congress did not abrogate that immunity when enacting Section 1983. *NiGen*, 804 F.3d at 394.

Under the Eleventh Amendment, the state is immune from Plaintiff's claim for damages against Alamu in his official capacity. The claim therefore will be dismissed for lack of jurisdiction.

### B. Qualified Immunity

As for the claim against Alamu in his individual capacity, Alamu has invoked qualified immunity. Plaintiff bears the burden to negate the defense. *See Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017). Determination of qualified immunity requires a bifurcated analysis: first, the court must decide "whether the undisputed facts and the disputed facts, accepting the plaintiffs' version of the disputed facts as true, constitute a violation of a constitutional right"; and second, the court must determine "whether the

defendant's conduct was objectively reasonable in light of clearly established law." *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015) (internal quotation marks and citation omitted); *see Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 181 (5th Cir. 2016) (internal citation and quotation marks omitted). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Hanks*, 853 F.3d at 744 (internal citations and quotation marks omitted).

A reviewing court may address the two prongs of the qualified immunity analysis in any sequence, depending on the circumstances of the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017). Given the circumstances of this case, the Court proceeds to the Eighth Amendment analysis.

## C. Eighth Amendment Excessive Force Claim

When a prisoner claims that a prison official's use of force violated the Eighth Amendment's ban on cruel and unusual punishments, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312 (1986)). "[Not] every malevolent touch by a prison guard gives rise to a federal cause of action." *Id*. at 9. The Eighth Amendment prohibition "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience

of mankind." *Id*. at 9-10 (internal citations and quotation marks omitted). *Hudson*, applying *Whitley*, identified five factors relevant to the Court's analysis: (1) the extent of injury suffered by the inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and, (5) any efforts made to temper the severity of a forceful response. *Id*. at 7. Regarding injury to the inmate, the Court stated, "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." *Id*.[7]

In *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010), the Supreme Court reaffirmed *Hudson*'s holding that the courts must focus on the nature of force applied, rather than a certain quantum of injury. The Court again rejected the notion that a plaintiff must show "significant injury" or "serious injury" to prevail on an Eighth Amendment claim. "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." *Id*.

Plaintiff alleges that Alamu violated his Eighth Amendment right not to be subjected to excessive force when Alamu sprayed him with a chemical agent. The use of chemical spray against prisoners confined in their cells is not a *per se* Eighth Amendment violation. *See Thomas v. Comstock*, 222 F. App'x 439, 442 (5th Cir. 2007) (citing *Jones v. Shields*, 207 F.3d 491, 495-96 (8th Cir. 2000); *Williams v. Benjamin*, 77 F.3d 756, 763

---

[7] "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation, 'or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.'" *Id*. (quoting *Whitley*, 475 U.S. at 321).

(4th Cir. 1996); *Soto v. Dickey*, 744 F.2d 1260, 1270-71 (7th Cir. 1984)). The Court therefore examines the totality of the circumstances. *See id.*

Applying the *Hudson* factors, the "need for the application of force" weighs in favor of Plaintiff in this case. S*ee Hudson*, 503 U.S. at 7. The Court will assume, based on the Use of Force report and the disciplinary action against Alamu, that the chemical spray against McCoy was unnecessary. The fact that Defendant's use of force was unnecessary, or that he was disciplined, does not complete the Eighth Amendment inquiry. *See Lewis v. Sec'y of Pub. Safety and Corrections*, 870 F.3d 365, 369 & n.9 (5th Cir. 2017) (prison officials' violation of their own regulations, without more, does not establish a constitutional violation).

Other *Hudson* factors weigh in favor of Alamu. Alamu has presented summary judgment evidence that he reacted involuntarily after he "reasonably perceived" a threat from McCoy (Dkt. 20-1, at A-010), which is relevant to *Hudson*'s fourth factor. The record establishes without contradiction that Jackson, the inmate in a cell near McCoy's cell, had twice thrown liquids on Alamu, striking Alamu in the face.[8] Because the prison environment "indisputably poses significant risks to the safety of inmates and prison staff," an official such as Alamu "could plausibly have . . . thought," at the time of the incident with Plaintiff on the D-Line, that some limited use of force was necessary

---

[8] Alamu also maintains, and the Use of Force Report states, that that he was hit in the chin by an object that McCoy threw from his cell. McCoy disputes this fact and denies throwing anything at Alamu (Dkt. 28, at 1). McCoy points to no record evidence supporting his assertion. Nevertheless, the Court does not rely on this fact in reaching its conclusion.

preserve institutional order.[9]  To the extent Alamu's actions were inadvertent or not purposeful, a mere claim of negligence on the part of prison officials is not cognizable under § 1983 and does not demonstrate a violation of the Eighth Amendment.  *See Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986); *see also Redmond v. Crowther*, 882 F.3d 927, 937 (10th Cir. 2018) (observing that inadvertent or accidental exposure of prisoners to chemical gas "is antithetical to deploying that force maliciously or sadistically" and does not satisfy the intent requirement for an excessive force claim).

Alamu also has presented evidence that he tempered the use of force, as is relevant to *Hudson*'s fifth factor, by using only a short burst of spray, rather than the whole can, and by ending the incident immediately after the spray.  McCoy argues that the chemical spray was inappropriate because he posed no immediate threat from his cell (Dkt. 28, at 3).  However, as stated above, Alamu maintains that he acted involuntarily or inadvertently when he initiated the spray (Dkt. 20-1, at A-010).  He had short amount of time to react to what he reasonably perceived as a threat, used his spray to protect himself, and then terminated use of force.  This fifth factor therefore weighs in favor of Alamu.  *See Hudson*, 503 U.S. at 9-10 (constitutional prohibition against excessive force "necessarily excludes from constitutional recognition *de minimis* uses of physical force,

---

[9]  *See Whitley*, 475 U.S. at 321 (courts consider "whether the use of force ***could plausibly have been thought necessary***, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur") (emphasis added); *see also Bell v. Wolfish*, 441 U.S. 520, 546 (1979) ("maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of . . . convicted prisoners").

provided that the use of force is not of a sort repugnant to the conscience of mankind") (internal citations and quotation marks omitted); *see Thomas*, 222 F App'x at 442.

As for the extent of Plaintiff's injury, the Use of Force Report states that McCoy had no injury, based on Burkhalter's assessment (Dkt. 20-1, at A-019; Dkt. 20-2 at 1:00-1:10). The video generally corroborates the report because McCoy never complains on the video about his eyes, and is walking and talking with no detectible breathing issues (Dkt. 20-2).[10] Plaintiff disputes these facts, directing the Court's attention to his statements on the video that he couldn't breathe, as well as to his sick call slips showing his complaints over the next six months about eye discharge, stomach pain, and emotional harm, among other complaints. As stated above, however, these sick call slips indicate that a separate intervening event, in which McCoy alleges that he had ammonia "rubbed in [his] eyes," contributed to his medical issues. Moreover, the slips show handwritten notes stating that McCoy had been examined and treated (Dkt. 6, at 7; Dkt. 12-2, at 3). In any event, even crediting all of Plaintiff's allegations, his injuries resulting from the spray on December 28, 2016, qualify as a minor injury. *See, e.g.*, *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (sore, bruised ear lasting three days was *de minimis* injury); *Bradshaw v. Unknown Lieutenant*, 48 F. App'x 106, 2002 WL 31017404, at *1 (5th Cir. 2002) (burning eyes and skin, twitching of eyes, blurred vision, irritation of nose and throat, and mental anguish as result of chemical spray was *de*

---

[10] The Supreme Court has held that, on summary judgment, reliance on video evidence is appropriate. *Scott v. Harris*, 550 U.S. 372, 380-81 (2007) ("Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape").

*minimis*). This consideration is also relevant to the Court's analysis under *Hudson*. *See Wilkins*, 559 U.S. at 37-38 (noting that the "absence of serious injury" is relevant to an Eighth Amendment claim and that an inmate who lacks any discernable injury "almost certainly fails to state a valid excessive force claim").

At bottom, the Eighth Amendment inquiry is whether the force was applied "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm" *Hudson*, 503 U. S. at 6-7. The investigative finding that Alamu's use of force was unnecessary is inadequate to demonstrate "malicious" or "sadistic" behavior by Alamu, because the Supreme Court clearly has held that inadvertence or good-faith error does not suffice to show an Eighth Amendment violation:

> It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause. . . . The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense.

*Whitley*, 475 U.S. at 319. *See Hudson*, 503 U.S. at 9 ("[Not] every malevolent touch by a prison guard gives rise to a federal cause of action"). Although Plaintiff asserts that Alamu "was motivated in his actions by ill-will with a desire to injure" (Dkt. 1, at 20) and "sprayed [McCoy] for the malicious purpose of causing pain and suffering" (*id*. at 20-21), the record contains no competent summary judgment evidence supporting these conclusory allegations. To the contrary, the evidence of record demonstrates that Alamu reacted quickly to what he reasonably perceived was a security threat, given that he had recently been hit twice by liquid thrown from a neighboring cell (Dkt. 20-1, at A-010);

that he "went blank" and acted involuntarily out of fear in the moment (*id*.); that he did not use his full can of spray and immediately ended the incident (*id*. at A-011); and that he had not been previously disciplined (*id*. at A-006). All of this evidence supports the conclusion that Alamu's misdirected efforts were taken in self-defense and in a "good-faith effort to maintain or restore discipline." *See Hudson*, 503 U.S. at 6-7. McCoy's bare allegations that Alamu acted with malicious and sadistic intent are not supported by the evidence and do not suffice to create a genuine question of material fact *See Jones*, 678 F.3d at 348 (non-movant cannot avoid summary judgment simply by presenting conclusory allegations, unsubstantiated assertions, or legalistic argumentation).

For all of the reasons stated above, the Court concludes that Plaintiff has not demonstrated a genuine question of material fact as to whether Alamu acted in a good faith effort to maintain or restore discipline, rather than maliciously or sadistically to inflict pain or use force in excess of the need. *See Hudson*, 530 U.S. at 6-7. For the same reasons, Alamu is entitled to qualified immunity because his actions were not objectively unreasonable in light of clearly established Eighth Amendment law. *See Hanks*, 853 F.3d at 744; *Carroll*, 800 F.3d at 169.

### D. Plaintiff's Request for Leave to Amend His Pleadings

After Defendant moved for summary judgment, Plaintiff McCoy filed two motions for leave to amend his complaint. Rule 15(a) provides that a court "should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). A court must have a "substantial reason" to deny a request for leave to amend. *Stem v. Gomez*, 813 F.3d 205, 215 (5th Cir. 2016). Leave to amend is not automatic, and the decision to grant

or deny leave to amend "is entrusted to the sound discretion of the district court." *Pervasive Software Inc. v. Lexware GmbH & Co.*, 688 F.3d 214, 232 (5th Cir. 2012) (internal citation and quotation marks omitted). A district court "should consider factors such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment.'" *In re Am. Int'l Refinery, Inc.*, 676 F.3d 455, 466-67 (5th Cir. 2012) (quoting *In re Southmark*, 88 F.3d 311, 315 (5th Cir. 1996)); *Duzich v. Advantage Finance Corp.*, 395 F.3d 527, 531 (5th Cir. 2004).

McCoy filed his first motion for leave to amend (Dkt. 24) after he had the opportunity to review the Use of Force video. He argues in his motion that Jackson can be heard admitting that Jackson had assaulted Alamu, and that "this additional evidence . . . proves that the use of force by Alamu was unnecessary and unjustified" (*id.* at 1). Plaintiff's motion will be denied as futile because the facts he asserts do not alter the Court's analysis above of his Eighth Amendment claims. Moreover, Plaintiff's motion is unnecessary because the Court already has given full consideration to the Use of Force video.

In his second motion for leave to amend (Dkt. 31), Plaintiff seeks "injunctive relief to be assured the defendant Mr. Alamu does not violate his rights again" if McCoy and Alamu are ever on the same unit. Because Plaintiff makes no allegations relevant to the four elements necessary to warrant injunctive relief, *see Jones v. Texas Dep't of Criminal Justice*, 880 F.3d 756, 759 (5th Cir. 2018), and for all of the reasons stated

above in the Court's analysis of Plaintiff's Eighth Amendment claim, this motion to amend will also be denied.

The Court in its discretion denies both of Plaintiff's motions for leave to amend his complaint.

## IV. CONCLUSION

For the reasons stated above the Court **ORDERS** that:

1. Plaintiff's motion for summary judgment (Dkt. 12) is **DENIED**.

2. Defendant's motion for summary judgment (Dkt. 20) is **GRANTED**. All of Plaintiff's claims are **DISMISSED with prejudice**.

3. Plaintiff's motions to amend his complaint (Dkt. 24, Dkt. 31) are **DENIED**.

A separate final judgment will issue.

SIGNED at Galveston, Texas, this 22nd day of August, 2018.

_____
George C. Hanks Jr.
United States District Judge